IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SAM CLYMA, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 03-CV-809-TCK-PJC |
| | ) | |
| SUNOCO, INC., a Pennsylvania Corporation, | ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is Plaintiff's Motion for Reinstatement and Motion to Enter Judgment on the Verdict and Request for Prejudgment Interest and Relief for Tax Consequences (Dkt. No. 78),

A trial in the above-captioned matter was held at various times during February 22, 2005 through March 3, 2005. On March 3, 2005, the empaneled jury found that Plaintiff proved by the greater weight of the evidence that Defendant discriminated against him in violation of the Americans with Disabilities Act ("ADA"). The jury thus awarded Plaintiff $155,025.00 in back pay, $217,218.00 in compensatory damages, and $100,000.00 in punitive damages.

Prior to trial, the parties stipulated that reinstatement or front pay and any offsets thereto would be determined by the Court and that the jury's verdict on back pay would be advisory. Plaintiff now moves for entry of judgment. In finalizing judgment, the Court "has a broad discretion in fashioning relief to achieve the broad purpose of eliminating the efforts of discriminatory practices and restoring the plaintiff to the position that he would have likely enjoyed had it not been for the discrimination." *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir. 1980). As to the

back pay award, once the Court decides to use the jury's verdict as advisory, it is obligated to make its own findings. *Cf. Marvel v. United States*, 719 F.2d 1507, 1515 n.12 (10th Cir.1983).

**Reinstatement or Front Pay**

Plaintiff asks that he be reinstated to his former position as maintenance electrician with reasonable accommodations. Examples of reasaonble accommodations presented at trial include permitting Plaintiff to work in areas where there is no excessive noise as relevant to Plaintiff, or providing him a vibrating pager so that he can be made aware of warning signals in areas where he is required to wear hearing protection. In the alternative, Plaintiff requests the Court award him front pay for a period of ten years.

Defendant argues Plaintiff maintained at trial that he was unable to return to work and therefore is not a candidate for reinstatement. Specifically, Defendant quotes Plaintiff's statement at trial, "I don't feel like I can [work] yet. But it's a goal I am working for." (Trial Tran. p. 87 ll. 12-18). However, based on the evidence, the jury reasonably found that Plaintiff was "qualified" under the ADA, that is, capable of performing the "essential functions" of his position with or without reasonable accommodation.[1]

---

[1] The Court must uphold those finding implicit in the jury's verdict.

Pursuant to the Seventh Amendment to the Federal Constitution, in fashioning equitable relief, a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.* 298 F.3d 955, 965-66 (10th Cir.2002) (holding that the district court abused its discretion in refusing front pay under an ADA and FMLA claim because it "disregarded the jury's implicit finding that [the plaintiff] would have been employed at least until the date of trial"). In other words, "the subsequent findings by the trial judge in deciding the equitable claims [cannot] conflict with the jury's [explicit and implicit] determinations. *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 912-913 (10th Cir. 2004) (quoting *Ag Services of America, Inc. v. Nielsen*, 231 F.3d 726, 731 (10th Cir. 2000).

Between reinstatement and front pay, reinstatement is generally the preferred remedy. *Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158 (2003). While it is clear Plaintiff is entitled to one or the other, the Court does not believe it can determine the appropriate remedy without a hearing on the matter. Thus, an equitable hearing on the issue of compensating Plaintiff from the trial forward is necessary.

**Backpay**

Prior to trial, the parties determined the Court would determine the backpay amount to be awarded to Plaintiff and treat the jury's verdict as advisory. The jury awarded Plaintiff actual damages or back pay in the amount of $ 155,025.00. It is unknown how the jury determined this figure. Essentially, Defendant contends that Plaintiff is entitled to zero back pay.

The following is the jury instruction given regarding back pay and also what guides the Court in its determination.

> Under the ADA and OADA, a Plaintiff is presumptively entitled to recover back pay. Back pay is any wages, salary, employment benefits, or other compensation Plaintiff would have received if there had been no adverse employment action until the time of the trial. Back pay is measured by the difference between what Plaintiff would have received in compensation if Defendant had not violated the ADA or OADA, set off against any wages, salary, employment benefits, or other compensation which he actually received from other employment after the adverse employment action.

(Jury Instr. p. 44.)

Defendant first contests that Plaintiff is entitled to backpay for the period of April 2002 through October 2002. Defendant's assertion is based on the fact that during that period of time, Plaintiff was on worker's compensation leave relating to injuries to his right arm and right knee. Plaintiff offers no coherent explanation or record evidence supporting his contention that he is entitled to back pay for this period. The Court therefore excludes the period of April 2002 through

October 2002 in calculating Plaintiff's back pay damages.

Next, Defendant argues Plaintiff is likewise ineligible for backpay from the period of November 2002 through June of 2003 because he could not perform the essential functions of his job. Whether Plaintiff could perform the essential function of his job was a major issue in the trial of this matter, and the jury found Plaintiff was capable of doing so, as evidenced by their verdict.[2] In November of 2002, Plaintiff was released to return to work by his orthopedic surgeon and Defendant refused to re-employ him because of his hearing. Thus, Plaintiff is entitled to back pay for the period of November 2002 through June 2003.

Last, Defendant maintains that Plaintiff cannot obtain backpay for the period of June 2003 through the trial because Plaintiff was unable to work due to carpal tunnel surgery. The Court believes, as the jury must have, the testimony of Plaintiff on this point. Specifically, Plaintiff stated he would not have elected to have the carpal tunnel surgery had he been permitted to work. *(See* Trial Tran. pp. 115 ll. 22-25; 116 ll. 1-13.)

Thus, the Court calculates Plaintiff's backpay values as follows:[3]

---

[2] In its initial and supplemental briefing on the entry of judgment, Defendant offered significant argument and new evidence on the point of whether Plaintiff was qualified to perform the essential functions of his job. The Court finds these arguments and evidence irrelevant in light of the jury's finding and the Court's duty to enter judgment consistent therewith. This is particularly true with respect to Defendant's attempts to persuade the Court to consider newly submitted evidence to reduce the back pay award.

[3] The following denotes Plaintiff's annual salary during the relevant time period in addition to noting months within the time period when Plaintiff received Medium Term

| Year | 2002 | 2003 |
|---|---|---|
|  | $4250 | $4417 |
|  | x    2 | x    8 |
|  | $8500 | $35,336 |
|  |  |  |
|  | $8500 | $17,688 (4 months of salary) |
| Less MTD Pay | x 35% | x 35% |
|  | $2,975 | $6,184 |
|  |  |  |
| Total for Year | **$2,975** | $35,336 |
|  |  | + $6184 |
|  |  | **$41,520** |

| Year | 2004 | 2005 |
|---|---|---|
|  | $4458 | $4458 |
|  | x   12 | x    2 |
| Total for Year | **$53,500** | **$8,916** |

### Other Benefits

| | | |
|---|---|---|
| Annual Thrift Plan | $2500 annually | $208 monthly |
| | | x 22 months (28 - 6 months of MTD pay) |
| | | **$ 4,576** |
| | | |
| Insurance Benefits | $1800 annually | $150 monthly |
| | | x 22 months (28 - 6 months of MTD pay) |
| | | **$3,300** |

Thus Plaintiff's back pay award totals $114,787.[4]

---

Disability ("MTD") pay. When Plaintiff received MTD pay, he also received his thrift and insurance benefits.

| Year | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|
| Annual Salary | $51,000 | $53,000 | 53,500 | 53,500 |
| Monthly Salary | $4,250 | $4417 | $4458 | $4458 |
| Months Eligible | 2 | 12 | 12 | 2 |
| Months at MTD Rate | 2 | 4 | 0 | 0 |

[4] When added together, the bolded numbers above total the final back pay award.

**Collateral Source Payments**

Defendant asks that the Court further reduce this award and deduct any worker's compensation or Social Security disability payments Plaintiff received during the relevant time period. Deducting collateral source payments from a back pay award is a matter within the trial court's discretion. *E.E.O.C. v. Wyoming Retirement System*, 771 F.2d 1425 (10th Cir. 1985).

> The collateral source rule allows a plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss. The rationale for the rule is at least two-fold: First, public policy favors giving the plaintiff a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source.

*Green v. Denver & Rio Grande Western R. Co.*, 59 F.3d 1029, 1033 (10th Cir. 1995).[5]   Having heard the evidence at trial, the Court finds that it would be entirely inappropriate to reduce Plaintiff's back pay award by the amount of Social Security disability benefits he received. It is Defendant's policy to require an employee seeking certain disability payments from Defendant to apply for Social Security disability benefits. *(See* Trial Tran. pp. 67 ll. 17-25; 68; 69 ll. 1-20.) Further, if the benefits are denied the first time, an employee must reapply at least twice. *(Id.)* In essence, Defendant sought to avoid paying full disability benefits to Plaintiff by asking him to obtain Social Security benefits and then attempted to use his application and receipt of those benefits to preclude him from recovering under the ADA. As to the worker's compensation benefits, Oklahoma law also employs the collateral source rule and strongly rejects any reduction of payments from a tortfeasor by reason

---

[5] The Tenth Circuit has held that Social Security disability benefits are collateral source payments. *See Green,* 59 F.3d at 1033 n.4 (suggesting that Social Security disability benefits are a collateral source where litigation is purely private and not one in that concerns the public money).

of already received worker's compensation benefits. *See generally Blythe v. University of Oklahoma*, 82 P.3d 1021 (Okla. 2003). Equitable concerns counsel in favor of refusing Defendant's reduction of Plaintiff's back pay award by monies received from collateral sources. The Court therefore denies Defendant's arguments for further reduction of Plaintiff's backpay award.

### Enhancement of Back Pay Award

Plaintiff requests the Court award him monies in addition to the back pay award due to compensate him for an alleged increase in income tax liability. This request is denied. Plaintiff is responsible for his own tax liability. Further, Plaintiff offers no evidence for calculating the enhancement were the Court to find such an enhancement appropriate. More importantly, however, Plaintiff offers no authority in which a court increased a back pay award for tax liability to the Plaintiff.[6]

### Prejudgment Interest on the Back Pay Award

"An award of prejudgment interest under federal law is governed by a two-step analysis. First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest." *U.S. v. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1257 (10th Cir. 1988), *implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231

---

[6] Plaintiff cites *Hukkanen v. International Union of Operating*, 3 F.3d 281, 286 (8th Cir. 1993) for the proposition the Court has discretion to award such an enhancement. But in *Hukkanen*, the court declined to award an enhancement for tax liability purposes because the plaintiff failed to present any evidence or formula to assist the court in determining what the enhancement would be.

(10th Cir.1996). Generally, prejudgment interest is awarded absent some justification for withholding it. *Id.* at 1256.

Defendant argues Plaintiff is not entitled to pre-judgment interest on the back pay award because the jury considered interest on the back pay award when it calculated Plaintiff's backpay. Defendant offers no evidence for this proposition, and the jury instruction given regarding back pay does not suggest consideration of interest on the monies Plaintiff would have had but for the Defendant's conduct. Further, the Court does not believe that would be a common consideration of a jury. Thus, the Court finds a prejudgment interest award would serve both a compensatory function and the equitable purpose of making Plaintiff whole. Plaintiff is entitled to prejudgment interest on the backpay award set forth herein.

**Punitive Damage Award**

Defendant requests the Court nullify the jury's verdict awarding Plaintiff punitive damages. In support of its argument, Defendant cites *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), wherein the Supreme Court delineated specific situations in which, despite the employer's discrimination, the application of punitive damages is inappropriate: (1) the employer is unaware of the relevant federal prohibition; (2) the employer discriminates in the belief that the discrimination is lawful; (3) the underlying theory of discrimination may be novel or poorly recognized; or (4) the "employer may reasonable believe that its discrimination satisfies a bona fide occupational qualification defense." *Id.* at 536-537. In short, punitive damages are only warranted where the plaintiff shows that the defendant engaged in a discriminatory practice "with malice or with reckless indifference" to the plaintiff's federally protected rights. *Id.* at 535. "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law,

not its awareness that it is engaging in discrimination." *Id.*

Defendant argues generally that it refused to allow Plaintiff to work because of concerns regarding the safety of Plaintiff and others. The Court disagreed with Defendant's characterization of the facts as absolute at the time it decided to permit the jury to determine whether Plaintiff was entitled to punitive damages. As Plaintiff points out, there were facts in evidence that indicated Defendant's discriminatory actions were not based on safety concerns. For example, while Defendant argues Plaintiff could not safely perform all of the tasks expected of a maintenance electrician, there was evidence at trial that there was no change in Plaintiff's hearing between the time he took worker's compensation leave in April 2002 and the time he returned to work in November 2002. Moreover the jury specifically rejected that Plaintiff posed a direct threat to himself or others by rejecting Defendant's direct threat defense.

Further, there is no allegation Defendant was not aware that the law requires accommodations be made for disabled workers. In addition to the fact that Defendant had an ADA policy in place and held employee training on same, Defendant's knowledge of its responsibilities to an employee under the ADA are further evidenced by the facts that Defendant initially offered Plaintiff an accommodation, subsequently had trouble enforcing the accommodation, and finally withdrew the accommodation altogether. There was ample evidence for a reasonable jury to find Defendant knew that it was discriminating "with the knowledge that it may be acting in violation of federal law," *Kolstad,* 527 U.S. at 535, and was discriminating in the face of a perceived risk.

For the foregoing reasons, in addition to the Court's responsibility to construe the verdict in a light most consistent with the jury's determinations, the Court affirms the jury's award of $100,000 in punitive damages.

Under the ADA, compensatory and punitive damages are capped. The applicable cap is $300,000 when the facility employs more than 500 employees. 42 U.S.C. § 1981a(b)(3)(D). Thus, the jury's awards of compensatory damages of $ 217,218.00 and punitive damages of $ 100,000.00 must be reduced by $17,218.00.

**Conclusion**

Plaintiff is awarded $114,787.00 in back pay and prejudgement interest shall be awarded thereon. Plaintiff is further awarded a total of $300,000 for compensatory and punitive damages. A hearing on reinstatement or front pay shall be held on the _14th_ day of _Feb._, 2006 at _10:00 AM_. Following such hearing, Plaintiff will prepare and submit a judgment reflecting the Court's determination of the reinstatement/front-pay issue and the rulings set forth herein. The prejudgment interest rate will be determined at that time.

ORDERED this _5_ day of January, 2006.

*Terence Kern*
TERENCE KERN
UNITED STATES DISTRICT JUDGE