# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAM CLYMA, an individual | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 03-CV-809-TCK-PJC |
| | ) |
| SUNOCO, INC., a Pennsylvania | ) |
| Corporation, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial and/or to Amend or Alter the Judgment (Doc. 145), Defendant's Motion to Place Pages of Exhibits Under Seal (Doc. 156), and Plaintiff's Motion for Attorney Fees (Doc. 162).

**I.     Background**

A trial in this matter was held at various times between February 22, 2005 and March 3, 2005. On March 3, 2005, the jury was impaneled and completed a special verdict form as to Plaintiff's discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201-12213. Therein, the jury awarded damages to Plaintiff, but answered "No" in response to Question (5)(A), which stated "[w]as there a reasonable accommodation?" (Ct. Ex. 5.) The Court then revised the language of Question (5)(A) to read "[w]as there a reasonable accommodation available?" and resubmitted the new verdict form to the jury. The jury then again returned a verdict

for Plaintiff, awarding the same amount of damages,[1] but answering "Yes" in response to the revised Question (5)(A).

Thereafter, Plaintiff moved for judgment on the verdict (Doc. 78), requesting that the Court enter judgment as to back pay and compensatory and punitive damages, and order Defendant to reinstate Plaintiff's employment. In its January 6, 2006 Order (Doc. 101), the Court calculated Plaintiff's back pay award at $114,787.00, along with prejudgment interest, and set the issues of front pay and reinstatement for hearing. The Court also denied Defendant's request to nullify the jury's award of punitive damages. However, because punitive and compensatory damages under the ADA are capped, the Court reduced the award of punitive and compensatory damages to a total of $300,000.00.

At a subsequent hearing on July 13, 2006, the Court heard argument as to the issues of front pay and reinstatement. In its July 17, 2006 Order, the Court held that there was "no reason that Plaintiff should not be reinstated" and ordered the parties to submit briefs on any front pay to which Plaintiff was entitled from the date of the jury verdict through the date the reinstatement offer was extended to Plaintiff. (*See* Doc. 118.) Thereafter, the Court determined that front pay from the date of the jury verdict through the date of reinstatement was improper because Plaintiff failed to mitigate his damages during this time. (*See* Doc. 139.) A judgment was entered in favor of Plaintiff wherein Plaintiff was awarded $114,787.00 in back pay, $300,000.00 for compensatory and punitive damages, and reinstatement.

---

[1] The jury awarded Plaintiff $155,025.00 in back pay, $217,218.00 in compensatory damages, and $100,000.00 in punitive damages. Prior to trial, the parties stipulated that reinstatement or front pay and any offsets thereto would be determined by the Court and that the jury's verdict on back pay would be advisory.

**II.     Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial and/or to Amend or Alter the Judgment**

Defendant now renews its motion for judgment as a matter of law. In the alternative, Defendant seeks a reduction in the amount of damages awarded to Plaintiff or a new trial.

**A.     Renewed Motion for Judgment as a Matter of Law**

Defendant originally moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 ("Rule 50") after the close of Plaintiff's evidence at trial. At that time, Defendant argued that the Court should grant it judgment on Plaintiff's ADA discrimination claim because: (1) Plaintiff could not perform the essential functions of his job as a maintenance electrician; (2) Plaintiff was not disabled; and (3) placing Plaintiff in a maintenance electrician position would pose a direct threat to the safety of Plaintiff and others. (*See* Trial Tr. vol. V, 733-47, March 1, 2005.) After Defendant's initial motion for judgment as a matter of law was overruled, Defendant renewed its motion at the conclusion of the trial. (*See* Trial Tr. vol. VII, 1077-89, March 3, 2005.) Again, Defendant's motion was overruled.

Now, Defendant brings its motion for judgment as a matter of law for a third time. In support of this motion, Defendant sets forth identical arguments as have previously been presented to this Court. Specifically, Defendant argues that judgment pursuant to Rule 50 is proper because: (1) there is no legally sufficient basis for a jury to find that Plaintiff was qualified to work as a maintenance electrician because he could not perform the essential functions of that job; and (2) Plaintiff would pose a direct threat to the safety of himself and others if placed in a maintenance electrician position. (*See* Def.'s Renewed Mot. for J. as a Matter of Law 23-30.) Defendant also argues judgment should be entered in its favor because the jury initially responded "No" in response to Question (5)(A).

Pursuant to Rule 50, a court may grant a motion for judgment as a matter of law, if, after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir. 2001). A judgment as a matter of law "may be granted 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" *Id.* (internal citations omitted). Again, applying this standard, the Court finds judgment pursuant to Rule 50 improper.

At the outset, the Court rejects Defendant's argument that judgment should be entered in its favor because the initial verdict form stated "No" in response to Question (5)(A). The remainder of the verdict form, including the assessment of damages against Defendant, clearly demonstrated that the jury intended to find for Plaintiff and was simply confused by the wording of Question (5)(A), leading the Court to resubmit the issue for clarification from the jury.

Further, as previously stated by the Court during trial, the Court finds there was a legally sufficient evidentiary basis for the jury to find for Plaintiff. With regard to Defendant's argument that there was no legally sufficient evidence demonstrating Plaintiff could perform the essential functions of his job, some of the key facts surrounding this issue were in dispute. Specifically, as outlined by this Court in its initial ruling on Defendant's Rule 50 motion, it was disputed whether all the electrical maintenance work was in hearing-protected areas, whether it was necessary for the position to have conversations with co-workers, and whether Plaintiff could safely work as a maintenance electrician while working alone. (*See* Trial Tr. vol. V, 754-56, March 1, 2005 (Court's oral ruling on Defendant's motion for judgment as a matter of law).) The evidence accordingly did not "poin[t] but one way," and was instead susceptible to reasonable inferences which could support

Plaintiff's position. *Phillips*, 244 F.3d at 796. Further, the Court again finds that it was proper to submit the direct threat defense to the jury, as there was not enough evidence for the court to quantify the amount of any threat, making this an issue ripe for jury determination. (*See* Trial Tr. vol V, 757, March 1, 2005.) Thus, in accordance with the Court's previous rulings at trial, Defendant's renewed Rule 50 motion is denied.

### B.      Motion to Amend or Alter the Judgment

Alternatively, Defendant argues that judgment in favor of Plaintiff should be reduced pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"). Rule 59(e) provides that a court may grant a motion to alter or amend a judgment where it is necessary to correct manifest errors of law or to present newly discovered evidence. In this instance, Defendant argues that the damage award should be modified because: (1) there was insufficient evidence to support an award of punitive damages; (2) there was insufficient evidence to award backpay because Plaintiff was not able to perform essential functions of his job; (3) the award of backpay was not warranted because Plaintiff did not mitigate his damages; (4) Plaintiff's social security and workers' compensation payments should be deducted from any award for back pay; and (5) Plaintiff is not entitled to compensation for insurance. The majority of these arguments have previously been presented to the Court at various times during the history of this litigation, and again, the Court affirms its prior rulings.

With regard to Defendant's argument that punitive damages were not warranted, the Court previously ruled on this issue both at trial, when Defendant argued that a punitive damages instruction should not be given, (*see* Trial Tr. vol. V, 753-54, March 1, 2005; *see also* Trial Tr. vol. VII, 1152-56, March 3, 2005), and in its Order of January 5, 2006 in response to Defendant's

argument that the Court should nullify the jury's punitive damages award (*see* Doc. 101). Once again, Defendant's reliance on *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), does not persuade the Court that punitive damages were unsupported in this case. As before, Defendant generally argues that it refused to allow Plaintiff to work because of safety concerns. The Court continues to disagree with this characterization because there were facts in evidence indicating that Defendant's actions were not solely based on safety concerns. (*See* Doc. 101 at 9 (listing specific examples of facts in evidence).) The Court continues to find that there was ample evidence for a reasonable jury to find "Defendant knew that it was discriminating 'with the knowledge that it may be acting in violation of federal law,' . . . and was discriminating in the face of a perceived risk." (*See* Doc. 101 at 9 (citing *Kolstad*, 527 U.S. at 535).) Accordingly, the Court is unwilling to modify the jury's award so that the award of punitive damages is nullified.

Second, the Court is unwilling to overturn the jury's award of back pay because of Defendant's argument that Plaintiff was not able to perform essential functions of his job. As outlined above, *see supra* Section II.B, the Court finds that some of the key facts surrounding Plaintiff's ability to perform the essential functions of his job were in dispute. This issue was further addressed in the Court's January 5, 2005 Order. (*See* Doc. 101 at 4.)

Third, Defendant argues that the award of backpay was not warranted because Plaintiff did not mitigate his damages. "One claiming damages for losses such as back pay has the duty to take such reasonable steps under the circumstances as will minimize those damages." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990) (internal citations omitted). "A claimant need only make a reasonable and good faith effort, and is not held to the highest standards of diligence," and the burden is on Defendant to establish that the claimant did not exercise reasonable diligence. *Id.*

6

(internal citations omitted). In the July 13, 2006 hearing on the issue of front pay versus reinstatement, Plaintiff stated that, before the trial in this case, he filled out "eight or ten job applications around Sand Springs and Sapulpa and Tulsa." (Hr'g Tr. 103, July 13, 2006; *see also id.* 104-05.) The Court finds that this constitutes sufficient evidence of reasonable efforts at mitigation, and Defendant has not demonstrated that Plaintiff did not exercise reasonable diligence so as to warrant reduction of the backpay award.

Fourth, the Court affirms its previous ruling that Plaintiff's social security and workers' compensation payments should not be deducted from any award for back pay. As outlined in the Court's January 5, 2005 Order, "[d]educting collateral source payments from a back pay award is a matter within the trial court's discretion." (*See* Doc. 101 at 6 (citing *E.E.O.C. v. Wyo. Retirement Sys.*, 771 F.2d 1425 (10th Cir. 1985).) The Court has previously stated that it "would be entirely inappropriate to reduce Plaintiff's back pay award by the amount of Social Security disability he received." (*See* Doc. 101 at 6.) Further, as to the workers' compensation benefits, the Court noted that Oklahoma law strongly rejects reduction of payments by reason of already received workers' compensation benefits, and therefore declined to reduce the backpay award because of equitable concerns. (*See id.* at 7.) Defendant has failed to present any argument sufficient for this Court to overturn its previous ruling on this issue.

Finally, with regard to Plaintiff's insurance benefits, Defendant argues that the damage award should be reduced because Plaintiff is not entitled to compensation for insurance. At trial, Plaintiff testified that he did not think that he was still covered under Defendant's insurance policy. (*See* Trial Tr. vol III, 532-35, February 24, 2005.) Thus, Plaintiff paid premiums in order to be

enrolled under his wife's plan. (*See* Trial Tr. vol. III, 535, February 24, 2005). The Court accordingly finds its award of insurance appropriate.

**C.     Motion for New Trial**

Alternative to its motion for judgment as a matter of law and motion for reduction of damages, Defendant moves for a new trial. Specifically, Defendant argues that this Court did not have authority to resubmit the verdict form to the jury. The Court finds Defendant's argument misplaced.

In *Heno* v. *Sprint/United Management Company*, 208 F.3d 847, 853 (10th Cir. 2000), the Tenth Circuit stated, "[o]rdinarily, a trial judge should point out apparent inconsistencies in the special verdicts to the jury and ask the jury to resolve the conflict." As further stated by the court, "[t]he alternative is to send the case back for a new trial." *Id.* Indeed, case law from other circuits makes clear that where a jury is still available, the trial court has the discretion to resubmit a special verdict form to the jury with a request for clarification; if the court elects not to seek clarification from the jury or the inconsistency is not noticed until after the jury has been dismissed, the court must then attempt to harmonize the answers, or order a new trial. *See, e.g., Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1057 (9th Cir. 2003) (finding that "where the jury is still available, a district court's decision to resubmit an inconsistent [special] verdict for clarification is within its discretion"); *Beard v. Flying J, Inc.*, 266 F.3d 792, 799-800 (8th Cir. 2001) (finding the district court had discretion to clarify jury's finding and resubmit special verdict form to jury); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 821-22 (8th Cir. 1998) ("A district court has discretion to decide whether a jury's findings on a [special] verdict form are incomplete, confusing, or inconsistent and whether to resubmit the claim to the jury."); *Santiago-Negron v. Castro-Davila*, 865 F.2d 431, 444 (1st Cir.

1989) ("The district court should have discretion to resubmit inconsistent answers to special verdict questions submitted under Rule 49(a) in the following circumstances: where the answers are inconsistent under any view; where the attorneys are or should be present; and, of course, where the jury has not been discharged."); *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir. 1988) ("If the inconsistency between special verdict answers is noticed prior to the dismissal of the jury, the trial court has the discretion to resubmit the issues to the jury with a request for clarification, whether or not the parties themselves request clarification.") ("If the court elects not to seek clarification from the jury, or the inconsistency is not noticed until after the jury has been dismissed, the court must take one of two actions. It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them. . . . If there is no way to harmonize the jury's answers, the court must order a new trial.") (internal citations omitted); *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1178 (5th Cir. 1987) ("While Rule 49(a) unlike 49(b) does not provide for resubmission of a verdict form, Rule 49(a) certainly does not preclude resubmission. Furthermore it has long been established in this Circuit that inconsistent special verdict answers may be resubmitted to a jury for clarification of the inconsistency.") (internal citations omitted); *cf. Wilkins v. Packerware Corp.*, 238 F.R.D. 256, 262 (D. Kan. 2006) (finding that district court lacked authority to resubmit special verdict questions to jury when, *inter alia*, jury had been discharged). *But see McCollum v. Stahl*, 579 F.2d 869, 871 (4th Cir. 1978) (holding that resubmission of questions under Rule 49(a) is not permissible because no provision is made for such procedure in the rule). [2][3] Accordingly, this Court finds support for its decision to resubmit a second verdict form

---

[2] In support of its contention that the Court did not have the authority to resubmit the verdict form to the jury, Defendant cites *Johnson v. ABLT Trucking Company*, 412 F.3d 1138, 1141 (10th Cir. 2005), which addresses whether failure to object to an alleged inconsistency in a special verdict

to the jury after the confusing nature of Question (5)(A) was illustrated in the jury's conflicting responses.

### III.    Defendant's Motion to Place Pages of Exhibits Under Seal

Defendant moves to place certain pages of trial exhibits and Workers' Compensation Court records under seal (Doc. 156). However, Defendant's description of these documents is incomplete, and the Court is unable to seal the documents without appropriate identification to said documents as related to the Court's CM-ECF system. Defendant's motion is accordingly denied, although Defendant is able to re-submit its request with citation to the relevant documents and exhibits on CM-ECF.

### IV.    Plaintiff's Motion for Attorney Fees

---

form during trial constitutes waiver of such objection after the fact. In analyzing this issue, the Tenth Circuit cited its previous case of *Bonin v. Tour West, Incorporated*, 896 F.2d 1260 (10th Cir. 1990), where the court was faced with the same issue. The *Johnson* court summarized *Bonin*, stating: "[Federal Rule of Civil Procedure] 49(a) does not provide for resubmission to the jury. Based on the lack of specific direction in the rule, we concluded that the court lacked authority to resubmit a special verdict . . . ." *Id.* at 1141-42 (citing *Bonin*, 896 F.2d at 1263). Defendant cites this statement as demonstrating support for a new trial. A close look at *Bonin*, however, indicates that the underlying facts at issue differ from those in the instant case in one principal respect – namely, the inconsistencies in the verdict form were identified <u>after</u> the jury had been discharged, negating the option of asking the jury to resolve any conflicting responses on its verdict form during the trial. *See Bonin*, 896 F.2d at 1262. Given the Tenth Circuit's clear statement in *Heno* and the weight of authority indicating that the trial court has the discretion to resubmit a special verdict form to a jury with a request for clarification, as cited above, this Court is not persuaded that *Johnson* and *Bonin* require a new trial.

[3] This Court declines to follow the Fourth Circuit's position on this issue given that the Tenth Circuit has clearly indicated that a trial judge should "point out apparent inconsistencies in the special verdicts to the jury and ask the jury to resolve the conflict." *Heno*, 208 F.3d at 853. Further, as stated by the First Circuit, "[s]uch a strict interpretation of [Rule 49(a)] can only result in new trials. Not only is justice delayed, but the parties are saddled with the cost of another round of litigation. So long as the court does not coerce a verdict, we see no harm, and much good, in allowing the jury to reconsider its inconsistent answers." *Santiago-Negron*, 865 F.2d at 444.

10

Plaintiff moves for attorney fees pursuant to 42 U.S.C. § 12205, Federal Rule of Civil Procedure 54(d)(2), and Northern District Local Rule 54.2, seeking an award of fees in the amount of $208,226.89. In response to Plaintiff's motion, Defendant filed its response brief, wherein it informed the Court that "[t]he Parties have conferred, and to forego additional time and costs to all parties, have reached an agreement regarding the reasonableness of the attorney fees sought by Plaintiff." (Doc. 172 at 1.) Specifically, the parties stipulated that the amount of $190,000.00 is a fair and reasonable amount for legal services rendered by Plaintiff. The Court therefore GRANTS Plaintiff's Motion for Attorney Fees (Doc. 162) and finds that $190,000.000 is a fair and reasonable amount for attorney fees and hereby awards said amount to Plaintiff. [4]

## V.   Conclusion

For the reasons outlined herein, the Court DENIES Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial and/or to Amend or Alter the Judgment (Doc. 145), DENIES Defendant's Motion to Place Pages of Exhibits Under Seal (Doc. 156), and GRANTS Plaintiff's Motion for Attorney Fees (Doc. 162). Plaintiff is awarded $190,000.000 in attorney fees.

**ORDERED this 8th day of AUGUST, 2008.**

_____
**TERENCE KERN,**
**UNITED STATES DISTRICT JUDGE**

---

[4] According to Defendant's response, the parties also agreed that, should the appeal process be favorable to Defendant, Defendant would not be liable for any attorney fees.