# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

SAM CLYMA, an individual, )
)
       Plaintiff, )
)
vs. )   Case No. 03-CV-809-TCK-PJC
)
SUNOCO, INC., a Pennsylvania )
Corporation, )
)
       Defendant. )

## OPINION AND ORDER

Before the Court is the Application of the Oklahoma Employment Lawyers Association ("OELA") for Permission to Interview Jurors for Instructional Purposes (Doc. 189) ("Motion"), wherein OELA seeks leave from the Court to contact jurors for the "purpose of providing educational information to members of the bar regarding jury dynamics in employment law cases." (Mot. 1.)

## I. Background

On March 3, 2005, a jury rendered a verdict for Plaintiff Sam Clyma and against Defendant Sunoco, Inc. in the underlying employment discrimination dispute. After the verdict, OELA, who is not a party to this matter, filed its Motion seeking leave to conduct post-verdict interviews of the jurors.[1] The Court denied OELA's request in a Minute Order (*see* Doc. 192), and OELA appealed said denial to the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"). On February 3, 2010, the Tenth Circuit issued its decision, directing this Court to vacate its prior Minute Order denying OELA's Motion and reconsider the Motion "pursuant to a meaningful exercise of its discretion in support of its ultimate determination." *Clyma v. Sunoco, Inc.*, --- F.3d --- , 2010 WL

---

[1] OELA describes itself as "an organization of plaintiffs' employment lawyers whose primary purpose is to provide educational and professional training for lawyers practicing in the area of employment litigation." (Mot. 1.)

367540, *4 (10th Cir. 2010). The Court therefore reconsiders OELA's Motion pursuant to the Tenth Circuit's Order.

**II.    Discussion**

OELA argues that "the First Amendment generally protects the right of persons to communicate with jurors regarding their decisions as well as the right of jurors to speak out on such matters." (Mot. 2.) In support of this assertion, OELA cites various cases arising in the context of news-reporting activities, wherein courts have acknowledged a news organization's First Amendment rights to conduct post-trial interviews with jurors. (*See* Mot. 2 (citing *In re Express-News Corp.*, 695 F.2d 807, 808-11 (5th Cir. 1982); *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978); and *Journal Pub. Co. v. Mecham*, 801 F.2d 1233, 1237 (10th Cir. 1986)).) OELA contends that, although its request to interview jurors is not made for news-gathering purposes, "contacts for the purpose of educating the profession as a whole stand on a similar First Amendment footing with news-gathering activities such that contacts for legitimate educational purposes should not be restrained." (Mot. 3.) OELA fails to provide any legal support for this contention.

The Court rejects OELA's argument for several reasons. First, as acknowledged by OELA, its request to contact jurors is not for the purpose of news gathering but is instead for the purpose of educating its attorney members. News gathering implicates weighty First Amendment considerations that are not present in this case. Specifically, although the First Amendment "does not invalidate every burdening of the press, or provide an unrestrained right to gather information, any inhibitions against news coverage of a trial carry a heavy presumption of an unconstitutional prior restraint." *Journal Pub. Co.*, 801 F.2d at 1236 (internal citations omitted). OELA has failed to provide any case law or argument demonstrating that inhibitions against juror contact for the purposes of attorney

education are subject to such a "heavy presumption." The Court therefore finds OELA's cited cases inapplicable to its request. *See Journal Pub. Co.*, 801 F.2d at 1237 (distinguishing cases discussing contact with jurors by news media from cases dealing with contact by parties or attorneys).

More on point are cases in which an attorney, as opposed to a news organization, sought leave to contact jurors after a trial. Review of such cases demonstrates that federal courts have "generally disfavored post-verdict interviewing of jurors." *Haeberle v. Texas Int'l Airlines*, 739 F.2d 1019, 1021 (5th Cir. 1984); *see United States v. McDougal*, 47 F. Supp. 2d 1103, 1104 (E.D. Ark. 1999) (same); *Olsson v. A.O. Smith Harvestore Prods., Inc.*, 696 F. Supp. 411, 412 (S.D. Ind. 1986) ("Most courts do not allow attorneys to contact jurors after the conclusion of trial."); *Sixberry v. Buster*, 88 F.R.D. 561, 561-62 (E.D. Pa. 1980) ("It is well settled that the Federal courts strongly disfavor any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them.") (internal quotations and citations omitted). Federal courts prohibit post-trial contact between jurors and attorneys in order to "(1) avoid harassment of jurors, thereby encouraging freedom of discussion in the jury room, (2) reduce the number of meritless post-trial motions, (3) eliminate a significant source of jury tampering, and (4) increase the certainty of verdicts." Dale R. Agthe, Annotation, *Propriety of attorney's communication with jurors after trial*, 19 A.L.R. 4th 1209, at § 2 (1983 and Supp. 2009).

The Court finds the case of *Haeberle v. Texas International Airlines*, 739 F.2d 1019, 1021 (5th Cir. 1984), particularly instructive. In *Haeberle*, the trial attorneys requested permission to conduct post-trial juror interviews in order to "satisfy [the attorneys'] curiosity and to improve their techniques of advocacy." *Id.* at 1022. Thus, similar to OELA's request, the request in *Haeberle* was for the "purpose of educating counsel." *Id.* at 1021. In affirming the district court's denial of the attorneys'

3

request, the Fifth Circuit distinguished cases involving journalists' rights to gather news from attorneys' rights to improve advocacy. Specifically, the court stated:

> Unlike the reporter in [*In re Express-News Corp.*, 695 F.2d 807 (5th Cir. 1982)], the petitioners in this case did not seek juror interviews in order to serve the general public's right to receive information about judicial proceedings. Rather, they sought information to satisfy their own curiosity and to improve their techniques of advocacy. Although these interests are not without first amendment significance, they are not "paramount" like the public's right to receive information necessary for informed self-government. The petitioners' access to information from jurors carries far less weight in the first amendment scale than a restriction on access to information that affects political behavior.

*Id.* at 1022. The court then held that "the first-amendment interests of both the disgruntled litigant and its counsel in interviewing jurors in order to satisfy their curiosity and improve their advocacy are limited [and] plainly outweighed by the jurors' interest in privacy and the public's interest in well-administered justice." *Id.*[2]

The Court agrees with the reasoning of *Haeberle* and finds that OELA's First Amendment rights are severely outweighed by the juror's privacy interests and the public's interest in "well-administered justice." *Id.* Although professional training programs are laudable, the Court is unwilling to invade the individual privacy of the jurors or the general province of the jury in order to further such programs, as "the inviolability of the jury room from outside influence of any sort, actual or potential, is a prime necessity in the administration of justice." *Sixberry v. Buster*, 88 F.R.D. 561,

---

[2] In *Haeberle*, the district court "denied leave [to interview jurors] *without an opinion*." *Id.* at 1020 (emphasis added). The Fifth Circuit affirmed the district court without any demand for a written opinion. In contrast, the Tenth Circuit directed this Court to vacate its Minute Order and "reconsider the matter pursuant to a meaningful exercise of its discretion in support of its ultimate determination." *Clyma*, 2010 WL 367540, at *4. Although the Court is abiding by the Tenth Circuit's directive, the Court believes inefficiency will result if district courts are forced to draft written opinions in response to every post-trial request to interview jurors. Such a requirement is cumbersome and results in an inefficient use of judicial resources.

4

562 (E.D. Pa. 1980) (denying attorney's request to interview jurors so that attorney could improve his trial skills because "[t]o allow counsel to interrogate a jury after a verdict has been rendered would be unduly vexatious, oppressive, and potentially intimidating to the jurors so questioned"); *Olsson*, 696 F. Supp. at 412 (denying motion for leave to interview jurors after finding that "absent a showing of . . . juror impropriety, an attorney is not permitted to invade the province of the jury room for the purpose of improving his skills as a trial lawyer by ascertaining from the jurors which facets of the trial influenced their verdict") (stating further that "[p]ost verdict communications with jurors solely for the purpose of an attorney's self-education cannot be permitted"). This is especially true when, as here, the requested interviews would only benefit attorneys representing plaintiffs in employment cases as opposed to attorneys on both sides of the case.

Accordingly, the Application of the Oklahoma Employment Lawyers Association for Permission to Interview Jurors for Instructional Purposes (Doc. 189) is DENIED.[3]

**SO ORDERED THIS 4TH DAY OF MARCH, 2010.**

_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court was unable to locate any cases involving a request to interview jurors made by an *outside* attorney or legal organization rather than the trial attorney. However, this difference is of minimal importance because the underlying purpose of the requests – namely, attorney education – remains the same. Although specific concerns about jury tampering or using juror interviews to search for grounds for new trial might be of less import in this case, concerns regarding juror privacy and the administration of justice remain.